**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____
                                                    :
ISAAC BARLOW ,                                      :
                                                    :
                          Petitioner,               :        **Civil No. 10-2770 (FLW)**
                                                    :
            v.                                      :        **OPINION**
                                                    :
UNITED STATES OF AMERICA,                            :
                                                    :
                          Respondent.               :
_____:

WOLFSON, United States District Judge:

        Presently before the Court is a Petition by Issac Barlow[1] for a Writ of Habeas Corpus,

pursuant to 28 U.S.C. § 2255, to vacate his June 20, 2007 conviction and/or reduce his

subsequent sentence of life imprisonment.  Barlow's habeas petitions centers on a claim of

inadequate service of an Enhanced Penalty Information ("the Information") and allegations

of ineffective assistance of counsel.  For the reasons explained herein, the Court concludes

that Barlow's petition is without merit, consequently, his petition is denied.

_____

        [1]        Throughout the record and briefs, Petitioner's name is spelled two different
ways ("Issac" and "Isaac"). In Petitioner's own §2255 brief his name is spelled "Isaac"
however the brief is signed "Issac." I have adopted the Petitioner's signed version of
"Issac."

## I.    BACKGROUND

On December 22, 2006, a federal grand jury returned a seven-count Superseding Indictment against Barlow. Count One charged Barlow and Alfredo Payne, his co-defendant and alleged co-conspirator, with conspiracy to distribute 50 grams or more of crack cocaine, contrary to 21 U.S.C. § 841(a)(1) and (b)(1)(A). Counts Two and Five charged Barlow with possession with intent to distribute 50 grams or more of crack cocaine on January 7, 2006 and between January and March 2006, respectively.  Count Three charged Barlow and Payne with possession with intent to distribute powder cocaine on February 14, 2006. Similarly, Count Four charged Barlow and Payne with possession with intent to distribute crack cocaine on February 14, 2006.  Lastly, Count Six charged both defendants with possession with the intent to distribute 50 grams or more of crack cocaine on March 31, 2006.  As Count Seven was charged solely against Alfredo Payne, that count is not a subject of this petition.

The instant petition follows the Third Circuit's affirmance of Barlow's and Payne's convictions on direct appeal.   Because the facts and procedural history of this case are protracted, for context, I first provide an abridged version of the facts adduced at trial by quoting the Third Circuit's aptly summarized recount of the facts on appeal.  More detailed descriptions of the facts and procedural history are set forth in each corresponding section of my analysis below.

Isaac Barlow and Alfredo Payne (collectively "Defendants"), appeal their respective convictions for various

drug conspiracy charges ....

The facts of this case are lengthy and complicated. In short, Defendants were members of a street gang in Trenton. Between November 2005 and March 2006, they were arrested for dealing crack, cocaine, heroin, and marijuana on multiple occasions by both state and federal authorities. These arrests resulted from testimony of confidential informants who recorded drug transactions, as well as cooperation from another gang member after Barlow tried to kill him. The police recovered an inordinate amount of incriminating evidence incident to these arrests.

While in pre-trial detention, Barlow talked to another federal prisoner at length about the charges against him. The prisoner, familiar with the role of a cooperating witness, kept notes of the incriminating statements, and notified the FBI. In addition, Barlow called his wife from jail several times, during which he admitted critical facts and discussed efforts to silence government witnesses. Payne, also incarcerated, sent letters to Barlow, discussing trial strategy and admitting several critical facts. He apparently was unaware that mail to and from inmates is reviewed by prison authorities.

U.S. v. Barlow, 307 Fed.Appx. 678, 679-80 (3d Cir. 2009).

After hearing all this evidence, the jury convicted Barlow of Counts One, Two, Three, Five, and Six. Prior to trial, the United States of America ("the Government") filed an Enhanced Penalty Information for Petitioner pursuant to 21 U.S.C. § 851(a), detailing certain prior state convictions that the Government intended to rely upon at sentencing. At sentencing, based in part on the prior convictions included in the Information, this Court sentenced Barlow to concurrent terms of life imprisonment on Counts One, Two, and Six, and concurrent terms of 240 months' imprisonment on Counts Three and Five. As

noted, Barlow subsequently appealed and the Third Circuit affirmed.  Following that

affirmance, Barlow filed his habeas petition in this Court.  He has, further, moved for

summary judgment on the petition on his inadequate service claim.[2]  The Court now rules

on both his petition and motion for summary judgment.[3]

## II.    DISCUSSION

Through his habeas petition, Barlow claims that he received ineffective assistance

of counsel at trial and that his appellate counsel should have pursued additional claims on

appeal, such as challenging the sufficiency of the evidence presented against him.  But

Barlow's central argument in support of his habeas petition is that the Government did not

properly serve him with a statutorily-required notice of its intent to seek an enhanced

sentence.  I turn to his service argument first.

### A.    Improper Service of Enhanced Penalty Information

Barlow argues that the Government failed to properly serve him with a notice

pursuant to 21 U.S.C. § 851 (the "Three Strikes Provision"), detailing the prior convictions

upon which the Government would base its request for an enhanced sentence.   Under 21

U.S.C. § 851(a)(1):

> No person who stands convicted of an offense under this part
> shall be sentenced to increased punishment by reason of one or

---

[2]    He has termed this motion as one for partial summary judgment.

[3]    Barlow's motion for summary judgment restates many of the same
arguments made in his inadequate service argument in his petition, albeit with more
specificity.  Accordingly, the Court jointly addresses the petition and the motion.

> more prior convictions, unless before trial . . . the United States
> attorney files an information with the court (and serves a copy
> of such information on the person or counsel for the person)
> stating in writing the previous conviction to be relied upon....
> Clerical mistakes in the information may be amended at any
> time prior to the pronouncement of sentence.

In other words, in order to subject a defendant to increased sentencing for a prior drug conviction, the Government is required to serve on the defendant's counsel an Information that describes the previous conviction(s). "One of the primary purposes of the § 851 notice requirement is to inform the defendant that the Government intends to seek an enhancement before the defendant decides whether to enter a guilty plea or go to trial so that the defendant can make an informed decision as to his or her option." U.S. v. Isaac, 655 F.3d 148, 156 (3d Cir. 2011).

The Third Circuit, in United States v. Weaver, 267 F.3d 231, 247 (3d Cir. 2001), joined the Eleventh Circuit and the Fifth Circuit in strictly interpreting § 851(a)'s service requirements. As recently reiterated by the Circuit in U.S. v. Isaac, "[t]he requirements set out in § 851 are mandatory and a district court may not impose an enhanced sentence unless the defendant has been notified of the 'strikes' in compliance with these provisions." 655 F.3d at 157 (quoting Weaver, 267 F.3d at 246). Where the service provisions of § 851(a) have not been complied with, the sentence must be vacated even if the overall length of the sentence will not be altered. Id. at 157. This is because " § 851 is not merely hortatory; it is important to hold the Government to the congressionally imposed requirements." Id.

In this connection, the Government's compliance with section 851 is mandatory "regardless of whether a defendant has actual notice of the government's plans to enhance his sentence." Weaver, 267 F.3d at 247 ( citing Harris v. United States, 149 F.3d 1304, 1307 (11th Cir. 1998)).

Here, the Government filed an Enhanced Penalty Information ("Information") on May 11, 2007.  The Information was either hand-delivered or mailed to the Clerk of the United States District Court, as evidenced by the marking on the filed Information that it was "RECEIVED MAY 11 2007." See See Crim. Action No. 06-694 (FLW), Docket Entry No. 63.  The Information includes four numbered paragraphs setting forth four prior drug convictions in the New Jersey state courts—three May 2, 1997 felony convictions resulting from a February 13, 1996 guilty plea to three separate indictments charging possession of a controlled dangerous substance with intent to distribute on or near school property, and one June 14, 2002 felony conviction for distribution of a controlled dangerous substance, based on a jury finding Barlow guilty of that crime on April 16, 2002.  See Govt. Resp., Exh. A at ¶¶ 1-4.  According to the Information, the four felonies were for conduct on distinct dates—November 11, 1993, April 1, 1995, September 15, 1995, and June 8, 2000.  Id. at ¶ 5.

After the Information was received by the Clerk's Office, a docket clerk electronically filed it, as evidenced by the docket clerk's initials on the docket entry.  See Crim. Action No. 06-694 (FLW), Docket Entry No. 63.  Once the Information was filed, the

Clerk's Office electronically transmitted it to Barlow's counsel, James R. Murphy, Esq., at the following email addresses: jrmm26@att.net and jrmmurphy@att.net.  See Notice of Electronic Filing dated May 11, 2007 (indicating that Information was electronically mailed at 3:19 PM EDT).[4]  When delivering the Enhanced Penalty Information to the Clerk's Office, the Government did not append a Certificate of Service to it.

On the day of trial and prior to selecting a jury, the Court confirmed that Murphy received a copy of the Enhanced Penalty Information.  Murphy did not acknowledge or deny receipt of the electronic copy.  Rather, he stated that a copy had been sent to him via facsimile:

> THE COURT:        . . . I want to make sure that defendants are present in the courtroom as well and that we have agreement on a number of things.
>
> One is that the government has now filed an Enhanced Penalty Information as to Mr. Barlow.
>
> Mr. Murphy, you received that.  Is that correct?

---

[4]        While the parties did not provide the Court with the Notice of Electronic Filing, the Court may take judicial notice of court records.  See Sands v. McCormick, 502 F.3d 263, 268 (3d Cir. 2007).  Interestingly, the Court's docket further reveals that the Enhanced Penalty Information was electronically filed a second time by another docket clerk later that same day, and that it was electronically mailed to the aforesaid email addresses (a second time) at 4:37 PM EDT.  See See Crim. Action No. 06-694 (FLW), Docket Entry No. 64; Notice of Electronic Filing dated May 11, 2007.

MR. MURPHY:Yes, I received the fax of it on Friday,[5] your Honor.

May 14, 2007 Trial Transcript ("Tr.") 3:11-19.  Barlow was present in the courtroom during this colloquy and,  indeed, confirmed to the Court that he understood the contents of the Enhanced Penalty Information as explained to him by his counsel.  See id. at 6:23 - 7:5.

Thereafter, the Court directed the Government to place on the record the contents of the Enhanced Penalty Information, which included reference to four distinct felony drug convictions in the state courts of New Jersey.  See id. at 4:3-18.  The Government, further, explained that if the Court were to find that Barlow had one prior conviction, his sentence would be increased to a mandatory minimum of 20 years and, with two or more prior convictions, his sentence would be increased to "a mandatory minimum of life without parole."  Id. at 5:4-15.  The Court also confirmed with Murphy that he discussed the Enhanced Penalty Information with Barlow, and that Barlow understood the discussion with his counsel.  Id. at 6:4-23.

Barlow argues that the Enhanced Penalty Information was not filed and served on his counsel in the manner proscribed by 21 U.S.C. § 851(a)(1).  In Barlow's view, the service was deficient because it was faxed to his counsel and facsimile transmission is not a proper means of service, citing U.S. v. Galiczynski, 44 F.Supp.2d 707 (E.D.Pa. 1999) aff'd 203 F.3d

---

[5]        Murphy did not specify the exact date upon which he received the fax.  It appears that he was referring to Friday, May 8th because the Information was filed electronically the following Monday, May 11th, and this colloquy took place on Thursday, May 14th.

818 (3d Cir. 1999).  Barlow further argues that the electronic filing did not constitute proper service because the Government did not submit a certificate of service with the Information as is required by the District of New Jersey's local civil rule governing Electronic Case Filing Policies and Procedures.  While acknowledging that it failed to file a certificate of service along with the Information, the Government contends that this slight violation of the local rule may be excused by the Court, citing, inter alia, U.S. v. Rivas, 493 F.3d 131 (3d Cir. 2007).

The parties agree that section 851(a)(1) incorporates the normal rules of service, which concession is consistent with the Third Circuit's pronouncement on this issue.  See id. at 141 (relying on United States v. Severino, 316 F.3d 939, 945 (9th Cir. 2003) for the proposition that "federal rules are incorporated by reference into § 851(a)").  Pursuant to Federal Rule of Criminal Procedure 49, "[s]ervice must be made in the manner provided for a civil action."  Federal Rule of Civil Procedure 5(b), the rule governing service in civil actions, provides that service may be accomplished by a variety of ways including, but not limited to, handing it to the person, Fed.R.Civ.P. 5(b)(2)(A), mailing it to his or her last known address, Fed.R.Civ.P. 5(b)(2)(C), or "sending it by electronic means if the person consented in writing—in which event service is complete upon transmission, but is not effective if the serving party learns that it did not reach the person to be served ...," Fed.R.Civ.P. 5(b)(2)(E).  There is no provision for facsimile transmission under Civil Rule

5.  Under both Criminal Rule 49 and Civil Rule 5, when a party is represented by an attorney, "service must be made on the attorney instead of the party ...." Fed.R.Crim.P. 49(b); Fed.R.Civ.P. 5(b)(1).  In short, the rules governing service dictate that section 851(a)(1) notices be served on the defendant's attorney through one of the various means set forth in Civil Rule 5(b)(2), including through electronic means.

With respect to electronic means of service, Civil Rule 5 further provides that "[i]f a local rule so authorizes, a party may use the court's transmission facilities to make service under Rule 5(b)(2)(E)." Fed.R.Civ.P. 5(b)(3).  In the District of New Jersey, that rule is Local Civil Rule 5.2 ("Local Rule 5.2"), which generally provides that "[p]apers served and filed by electronic means in accordance with procedures promulgated by the Court are, for purposes of Federal Rule of Civil Procedure 5, served and filed in compliance with the local civil and criminal rules of the District of New Jersey."  L. Civ. R. 5.2.

Pursuant to Local Rule 5.2, most documents must be electronically transmitted for filing.  Id. at 3.  The rule further provides that "[e]lectronic transmission of documents to the ECF System [, i.e., the court's electronic docketing system,] in accordance with these Procedures, together with the transmission of a Notice of Electronic Filing from the Court, constitutes filing of the document for all purposes of the Federal Rules of Civil Procedure, the Federal Rules of Criminal Procedure, and the Local Civil or Criminal Rules of this Court ..." Id. at 5.  A Notice of Electronic Filing is "a notice automatically generated by the

Electronic Filing System at the time a document is filed with the system, setting forth the time of filing [,] the name of the party and/or attorney receiving the notice, and an electronic link (hyperlink) to the filed document, which allows recipients to retrieve the document automatically." Id. at 1(d).

Paragraph 14 of Rule 5.2 specifically addresses service of documents by electronic means. Importantly, that paragraph provides:

> Upon the electronic filing of a pleading or other document, the Court's ECF System will automatically generate and send a Notice of Electronic Filing to all ECF Filing Users associated with that case. Transmission of the Notice of Electronic Filing constitutes service of the filed document on Filing Users.

Id. at 14(b)(1).[6] The paragraph further mandates that "[a] certificate of service . . . be included with **all documents** filed electronically." Id. (emphasis in original). That certificate "must indicate how service was accomplished, i.e., electronically and/or by other

---

[6] The paragraph further provides that

> [i]f the ECF Filing User becomes aware that the Notice of Electronic Filing was not transmitted successfully to a party, or that the notice is deficient, e.g., the electronic link to the document is defective, the filer shall serve a copy of the filed document by e-mail, hand, facsimile, or by first-class mail postage prepaid immediately upon notification of the deficiency of the Notice of Electronic Filing.

Id. This provision is not applicable here because neither party has argued that the Government became aware that the Information was not successfully transmitted or that the Notice of Electronic Filing was somehow deficient.

means as provided in Federal Rule of Civil Procedure 5(b) and Federal Rule of Criminal Procedure 49."  <u>Id.</u>  In addition, any user who registers for electronic filing "consent[s] to service of all papers via the Court's [electronic filing] System [and] the Notice of Electronic Filing constitutes service of the filed document on [such] Users."  <u>Id.</u>

There is one important caveat to this summary of the local rule.  Unlike most documents, the Local Rule directs that an Information in a criminal case must be "accomplished as a Paper Filing," which is a document submitted in "hard copy on paper." <u>Id.</u> at 3, 1(f).  The local rule does not state whether a certificate of service must accompany an Information accomplished as a Paper Filing; paragraph 14 of the rule states that it applies to documents filed electronically.

Here, as explained earlier, a hard copy of the Information was submitted to the Clerk's Office for filing.  It was then  electronically filed by a docket clerk and served electronically through the court's transmittal system.   Moreover, the Notice of Electronic Filing indicates that Murphy received copies of the Information at two separate email addresses.  Barlow concedes that Murphy agreed to receive electronic notices and filings; the only aspect of the filing process that Barlow challenges is that no certificate of service was filed.

Reading the local rule in conjunction with Federal Rule of Civil Procedure 5, it is my view that the Government properly served Murphy electronically despite not having filed

a certificate of service.  As an initial matter, it does not appear that a certificate of service is required under the local rule because an information must be accomplished as a Paper Filing.  In addition, Civil Rule 5 permits parties to use the court's transmission facilities to make service, as the Government did here, and further provides that, for electronically served documents, "service is complete upon transmission, but is not effective if the serving party learns that it did not reach the person to be served ...." Fed.R.Civ.P. 5(b)(2)(E).[7]  Barlow has not pointed to any record evidence indicating that the Government was aware that Murphy did not receive the electronic copy embedded in the Notice of Electronic Filing.  Indeed, in the colloquy on the day of trial, Murphy did not deny receiving the electronic copy—he merely noted that he received a facsimile copy.

Barlow argues that the colloquy does not show that Murphy received an electronic copy but, in making that argument, Barlow misperceives the standard.  Civil Rule 5 states that service is effective unless the serving party learns that it did not reach the person being served.  Thus, service would be ineffective only if Barlow can affirmatively demonstrate that the Government knew Murphy did not receive the electronic copy.  In the colloquy, Murphy did not deny reciept, in fact, he did not address receipt of the electronic copy at all.  Therefore, I conclude that the Government properly served Murphy through the

---

[7]       Hence Barlow's argument that "passive reliance upon the clerk to ensure that [defense] counsel received the notice does not meet the strict compliance required by . . . § 851," Pet. Open. Br. at 14-15, must be rejected.

13

Court's electronic transmittal system.[8]

But even if a certificate of service is required under the local rule, I do not find that the failure to file that certificate invalidates service here. The Third Circuit has held, in the section 851(a)(1) context, that a slight variation from local rules governing electronic <u>filing</u> may be waived:

> if § 851 incorporates by reference local rules and orders governing filing, it should also incorporate the law governing those rules and orders, and we have recognized that a district court has discretion to depart from the strictures of its own procedural rules where (1) it has a sound rationale for doing so, and (2) doing so does not unfairly prejudice a party who has relied on the rule.

<u>Rivas</u>, 493 F.3d at 141 (citation omitted). This same rationale applies to electronic <u>service</u> where it is clear from the court's records that the filed document was electronically served on a party who agreed to receive electronic notices. Barlow cannot reasonably argue that he was prejudiced here when Civil Rule 5 creates the presumption that his attorney received the electronic notice, his attorney acknowledged receiving a faxed copy and discussed that copy with Barlow, and the U.S. Attorney referred to the four prior convictions in open court prior to trial.

This is not to say that actual notice is sufficient under section 851(a)—it is not. <u>See</u>

---

[8]      I need not address Barlow's argument that the Government inappropriately relied upon facsimile service, which he correctly argues is not an approved means of service under the rules, because I conclude that electronic service was proper.

Weaver, 267 F.3d at 247.  Rather, Barlow's counsel's receipt of the electronic notice, the faxed copy, and Barlow's actual pre-trial notice make clear that he would not be prejudiced by this Court's waiver of the local rule certificate of service requirement.  This result furthers the central purpose section 851, which is "to inform the defendant that the Government intends to seek an enhancement before the defendant decides whether to enter a guilty plea or go to trial so that the defendant can make an informed decision as to his or her option," Isaac, 655 F.3d at 156; "Section 851 is focused on the facts to be included in the information, not on the specific procedures to be used in filing and service ...." Rivas, 493 F.3d at 142.  While a technical variation from the rule may call for vacating a sentence when no notice was actually received or the notice was otherwise deficient, compare Isaac, 655 F.3d at 157, that is not the case here.  Accordingly, whether or not a certificate of service should have accompanied the Information, service was properly effectuated in this case.

Barlow further argues that he and his counsel were provided only with general notice of the Government's intent to seek enhancement without detailing the specific prior convictions upon which the enhancement would be based.  This is simply untrue.  As noted above, the Information clearly sets forth the specific prior convictions.[9]  Therefore,

---

[9]     In this connection, Barlow contends that the document presented in court was a one-page Notice of Enhanced Penalty Information filed by the Government as Docket Entry No. 63 in the criminal docket.  Barlow further contends that this notice was only a general notice that did not include any information about the specific prior convictions upon which the Government intended to rely.  His argument makes no sense, however, because Docket Entry No. 63 is the exact same three-page filing, which includes details

Barlow's request for habeas relief on section 851(a) grounds is denied, as well as his summary judgment motion on this same basis.

**B.     Ineffective Assistance Claims**

The Sixth Amendment[10] guarantees criminal defendants the right to effective assistance of counsel.  <u>McMann v. Richardson</u>, 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). This right to effective counsel also extends to appeals. <u>See</u> <u>Evitts v. Lucey</u>, 469, U.S. 387, 406 (1985).

In order to succeed on a claim of ineffective counsel, Petitioner must satsify the two-prong test set forth in <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  First, Petitioner must show that counsel's performance (viewed as of the time of counsel's conduct) was inadequate and "fell below an objective standard of reasonableness," in that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed [to] the defendant by the Sixth Amendment." <u>Id.</u> at 687-688. Petitioner must then show that the deficient performance prejudiced the defense.  In other words, Petitioner must prove that there was "a reasonable probability that, but for

_____

about the convictions, that was filed under Docket Entry No. 64 as the Enhanced Penalty Information.   The Notice of Enhanced Penalty Information and Enhanced Penalty Information are the same exact document, twice filed.

[10]     The Sixth Amendment guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defense." U.S.Const. VI.

16

counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. In the sentencing context, prejudice exists where the inadequate performance affected Petitioner's sentence. United States v. Hankerson, 496 F.3d 303, 310 (3d Cir. 2007).

The U.S. Supreme Court recently reiterated that "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, —— U.S. ——, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284 (2010). Because "[a]n ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial," the Supreme Court has admonished lower courts that the "Strickland standard must be applied with scrupulous care ...." Harrington v. Richter, 131 S.Ct. 770, 788 (2011). "It is 'all too tempting' to 'second-guess counsel's assistance after conviction or adverse sentence," however, "[t]he question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." Harrington, 131 S.Ct. at 788 (quoting Strickland, 466 U.S., at 690, 104 S.Ct. 2052) (internal citations omitted). With these principles in mind, I turn to Barlow's specific challenges to his representation.[11]

---

[11]    In support of his ineffective assistance claims, Barlow presents a certification from his counsel in which counsel states that, in retrospect, he would have raised the issues that Barlow now argues he should have raised. The Court discounts this certification because the appropriate standard for ineffective assistance claims is one of objective

**1.      Failing to Raise Section 851(a) Service Issue on Appeal**

Having concluded that Barlow's section 851(a) argument is without merit, Barlow's ineffective assistance claim based on his counsel's failure to assert this claim on appeal also fails and Barlow is denied habeas relief on that ground.  Because Barlow did not raise this issue on appeal, he waived it and can proceed on habeas only by showing that this procedural default should be set aside under the habeas statute.  Hodge v. U.S., 554 F.3d 372, 379 (3d Cir. 2009).  "[C]ourts will exempt a movant from [procedural default] if he can prove either that he is actually innocent of the crime for which he was convicted, or that there is a valid cause for the default, as well as prejudice resulting from the default."  Id. A petitioner may demonstrate cause by showing that his counsel's representation fell below the Strickland objective standard of reasonableness and, "[i]f that is established, defendants must then show that they were prejudiced by counsel's deficient performance." See id. at 379.  "This requires that they demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." U.S. v. Mannino, 212 F.3d 835, 840 (3d Cir. 2000) (quoting Strickland, 466 U.S. at 694) (internal quotation marks omitted).

I concluded above that Barlow's trial counsel, Murphy, did not act unreasonably in

---

reasonableness, not subjective hindsight.  See Strickland, 466 U.S. at 688 ("When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness.") (emphasis added).

failing to object to the Government's form of service of the section 851(a) notice.  For this reason, Barlow has failed to demonstrate cause; Barlow did not receive ineffective assistance based on his appellate counsel's decision not to raise the inadequate service challenge on appeal.  Accordingly, I need not reach the prejudice prong of the procedural default analysis. Because Barlow cannot overcome procedural default, his ineffective assistance claim, on this basis, is denied.[12]

### 2.      Failing to Raise Sufficiency of the Evidence Challenge on Appeal

Barlow's appellate counsel did not mount a sufficiency of the evidence challenge on Counts One, Two, and Six, and Barlow contends that this decision constitutes ineffective assistance.[13]  As noted, Count One charged Barlow and Payne with conspiracy to distribute 50 grams or more of crack cocaine, contrary to 21 U.S.C. § 841(a)(1) and (b)(1)(A). Count Two charged Barlow with possession with intent to distribute 50 grams or more of crack cocaine on January 7, 2006 , and Count Six charged Barlow with possession with the intent

---

[12]      Barlow does not contend actual innocence.

[13]      As with Barlow's challenge to his appellate counsel's decision not to raise the inadequate service claim on appeal, Barlow has to overcome the procedural default cause-and-prejudice standard.  In addition, since Barlow's trial counsel did not raise a sufficiency of the evidence challenge, such a challenge would have been subject to plain error review on appeal.  See U.S. v. Peppers, 302 F.3d 120, 125 (3d Cir. 2002).  Because I conclude, for the reasons explained herein, that Barlow's sufficiency of the evidence challenge would have been rejected by the Third Circuit, Barlow cannot demonstrate prejudice under the procedural default standard and his ineffective assistance claim fails regardless of whether plain error review applied on appeal.

to distribute 50 grams or more of crack cocaine on March 31, 2006.

With respect to the conspiracy charge in Count One, Barlow argues that the Government failed to prove beyond a reasonable doubt that he conspired with another person in trafficking crack cocaine.  As for Count Two, Barlow argues that the Government failed to prove possession.  Although the Government introduced testimony that Barlow ran from Trenton police officers and that two clear plastic bags containing crack cocaine were found on the ground behind a vehicle along the path that Barlow ran, Barlow contends that several other people were standing near the car where the bags were found.  Hence, in Barlow's view, a reasonable jury could not have relied on the Government's evidence to conclude that he possessed the bag.

With regard to Count Six, Barlow points to the Government's reliance on an informant's testimony that he spoke with Barlow a few times in an effort to buy $1,500 worth of crack.  Yet, the informant testified that he obtained the crack from his co-defendant Payne later that day—not Barlow.  In Barlow's view, the informant's testimony does not sufficiently prove that Barlow, as opposed to Payne, possessed or constructively possessed the crack sold to the informant.

The Third Circuit has held that ineffective assistance claims may be disposed of on the second prong of Strickland—the prejudice prong—without a court first determining whether counsel's performance was deficient.  Palmer v. Hendricks, 592 F.3d 386, 394 (3d

Cir. 2010) (quoting <u>Strickland</u>, 466 U.S. at 697). The Third Circuit has further held in <u>Rainey v. Varner</u> that a petitioner suffers no prejudice where he "was wrongfully convicted of an offense for which there was insufficient evidence but is serving the same sentence that he would have been serving had he been properly convicted of the offense for which there was sufficient evidence." 603 F.3d 189, 201 (3d Cir. 2010). Here, Barlow was sentenced to three concurrent terms of life imprisonment on Counts One, Two, and Six. Thus, applying the principle set forth in <u>Rainey</u>, as long as Barlow was properly convicted of one of those three counts, he cannot demonstrate prejudice and his ineffective assistance claim fails.

"The burden on a defendant who raises a challenge to the sufficiency of the evidence is extremely high." <u>United States v. Wright</u>, --- F.3d ----, 2012 WL 10929, *3 (3d Cir. Jan. 4, 2012) (quoting <u>United States v. Lore</u>, 430 F.3d 190, 203 (3d Cir. 2005)). When such a challenge is raised on appeal, the Third Circuit "must affirm the jury's verdict so long as there is substantial evidence that, when viewed in the light most favorable to the government, would allow a rational trier of fact to convict." <u>Id.</u> (quoting <u>United States v. Lee</u>, 612 F.3d 170, 178 (3d Cir.2010) (quotation marks and citation omitted)).

The Government presented sufficient evidence in support of the Count Two possession charge. As Barlow acknowledges, the Government introduced testimony that Barlow ran from Trenton police officers and that two clear plastic bags containing crack cocaine were found on the ground behind a vehicle along the path that he ran. Indeed,

Detective Nathaniel Johnson testified at trial that he observed four to five men and Mr. Barlow standing on a street corner near Walnut Avenue.  Trial Transcript dated May 18, 2007 at 13:23-25.  He further testified that one of the men handed Barlow what Det. Johnson suspected to be currency, and Barlow reached into a clear plastic bag that he was holding and handed what Det. Johnson suspected to be crack cocaine to another man in the group. Id. at 14:1-7.   According to Det. Johnson, his partner, Detective Luis Vega, then flashed a flashlight on Barlow and began foot pursuit while Det. Johnson drove along a neighboring street.  Id. at 15:22-17:5.  No one else was running with Barlow, Det. Johnson testified.  Id. at 30:6-7.

Thereafter, Det. Johnson testified that he exited his car and noticed Barlow standing at the rear of a vehicle.  Id. at 36:1-14.  As Det. Johnson approached the vehicle on foot, Barlow crouched down at the rear passenger bumper.  Id. at 38:20-39:3.  At that time, according to Det. Johnson, two more men appeared and begin walking toward Barlow. Det. Johnson then overheard Barlow say "Yo, man.  Get this, get this, get this," id. at 43:2-6, just before Barlow took off running again.  Id. at 43:20-21.  Det. Johnson testified that he initially began to chase Barlow but, after only a few seconds, he heard someone say "Stop," and turned around to see two clear plastic bags lying in the area behind the vehicle where Barlow had been crouched.  Id. at 45:2-10. Those bags were filled with what was later confirmed to be crack cocaine.

22

In short, while Det. Johnson testified that two men approached Barlow while he was crouched behind the car, he also testified that Barlow said to those men "Get this, get this, get this."  A reasonable jury could credit Det. Johnson's testimony and interpret it to mean that Barlow held the bags in his possession and was attempting to offload them on the other men.  In addition, as noted, Det. Johnson testified that he saw Barlow holding similar-looking clear plastic bags prior to the chase.

"The essential elements of the substantive offense of possession of a controlled substance with intent to distribute are that the defendant (1) knowingly possessed a controlled substance with (2) the intent to distribute it." U.S. v. Iglesias, 535 F.3d 150, 156 (3d Cir. 2008) (quoting U.S. v. Bobb, 471 F.3d 491, 497 (3d Cir. 2006)).  A jury could convict Barlow of the possession charges if it concluded that he actually or constructively possessed the crack cocaine.  Id.

Crediting all inferences in favor of the Government, and particularly Det. Johnson's testimony, a reasonable jury could conclude beyond a reasonable doubt that Barlow possessed the crack cocaine found in the clear plastic bags.  Here, Det. Johnson's testimony supports a finding of constructive possession, which "requires an individual to have the power and intent to exercise both dominion and control over the object he or she is charged with possessing." Id. (quoting United States v. Garth, 188 F.3d 99, 112 (3d Cir. 1999) (citation omitted)). Constructive possession may be proved by circumstantial evidence, id.,

and Det. Johnson's testimony established that Barlow was crouched near the vehicle where the bags were ultimately located only a few seconds after Barlow ran away from the vehicle.

In light of this evidence, I reject Barlow's argument that he would have succeeded on a sufficiency of the evidence challenge on appeal.  More to the point, because Barlow was properly convicted of this possession charge, which carried a term of life, he cannot demonstrate Strickland prejudice.  Even assuming that he was improperly convicted of the Count One and Count Six charges, for which he was sentenced with concurrent life sentences, that he was properly convicted of the Count Two charge precludes him from demonstrating prejudice.  Accord Rainey, 603 F.3d at 201.  Furthermore, as the Government correctly notes, the Third Circuit indicated in Barlow's direct appeal that "the record demonstrates overwhelming evidence of [Barlow's] guilt ...."  Barlow, 307 Fed.Appx. at 681. Hence Barlow's contention before this Court that a sufficiency of the evidence challenge would have succeeded on appeal is specious, at best.  Accordingly, I reject his ineffective assistance claim based on a failure to raise sufficiency of the evidence on appeal.

### 3.    Trial Counsel's Failure to Call Cell Mates to Testify

Barlow contends that his trial counsel was ineffective for failing to call two of his former cell mates, Andre Dennis and Sulton Harris, to testify.  According to Barlow, these witnesses would have refuted the testimony of William Davis, the former cell mate who

testified that Barlow admitted that the drugs found on January 7, 2006 were his. The Government counters Barlow by arguing that his trial counsel's decision not to call Dennis and Harris was sound trial strategy under Strickland and, in any event, Barlow has not proffered "what these two cellmates would have been able to testify to and how that would have improved [Barlow's] chances of an acquittal." Govt. Opp. at 18. In other words, Barlow cannot satisfy the second Strickland prong—prejudice.

As noted, a "court need not determine whether counsel's performance was deficient before examining the prejudice suffered . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." Palmer, 592 F.3d at 394 (quoting Strickland, 466 U.S. at 697). Here, Barlow cannot demonstrate that he was prejudiced by his counsel's decision not to call Dennis and Harris to testify at trial. Noticeably, Barlow has not presented any affidavits, certifications, or declarations from Dennis or Harris setting forth the facts to which they would testify. This omission is fatal because Barlow

> cannot meet his burden to show that counsel made errors so serious that his representation fell below an objective standard of reasonableness based on vague and conclusory allegations that some unspecified and speculative testimony might have established his defense. Rather, he must set forth facts to support his contention.

Zettlemoyer v. Fulcomer, 923 F.2d 284, 298 (3d Cir. 1991).

As the Third Circuit recently reiterated in Palmer, it is not enough for a petitioner

to note the subject matter about which an uncalled witness would have testified and the legal theory that testimony would have furthered. 592 F.3d at 395. A petitioner claiming ineffective assistance must specify "the facts to which [the witness] would have testified." Id. Barlow has not even attempted to meet that standard here. For this reason, he has not satisfied the prejudice prong of the two-part Stickland test and his ineffective assistance claim fails.

### 4. Trial Counsel's Failure to Seek to Continue Trial Due to Publicity

Barlow challenges his trial counsel's decision not to move for a change of venue or a continuance of the trial in light of the publicity regarding an unrelated murder prosecution, "The Gulley Boy murder trial." The Sixth Amendment guarantees the right to be tried "by an impartial jury . . . consisting of . . . jurors who will conscientiously apply the law and find the facts." United States v. Jones, 566 F.3d 353, 358 (3d Cir.), cert. denied, 130 S. Ct. 528 (2009) (internal marks and citations omitted). In terms of adverse pretrial publicity, such "publicity can create such a presumption of prejudice in a community that the jurors' claims that they can be impartial should not be believed." Harris v. Ricci, 607 F.3d 92, 97 (3d Cir. 2010) (quoting Flamer v. Delaware, 68 F.3d 736, 754 (3d Cir.1995) (en banc)). However, a presumption of prejudice arises only in those rare cases that "[t]he community and media ... reaction [is] so hostile and so pervasive as to make it apparent that even the most careful voir dire process would be unable to assure an impartial jury."

26

Flamer, 68 F.3d at 754.

During trial, on May 18, 2007, the Assistant United States Attorney asked the district court for a jury instruction that they should ignore news media reports describing the Gulley Boy murder trial.  Trial Transcript dated May 18, 2007 at 131:1-23.  Trial counsel explained that Barlow's name had been mentioned in at least one Gulley Boy article in the Trenton Times, a local newspaper.   See id.   The court agreed to render a curative instruction and, later that same day, instructed the jury as follows:

> And I'm going to directly indicate I understand some of the local newspapers have carried some articles that are not related to the matter but have referenced the Gulley Boy, which you heard testimony about. Do not read any of those articles .... Be careful about staying away from articles, radio, et cetera, that touches upon any articles in this case or you may be hearing about in some way in this case.

Id. at 186:16-23.

"Juries are presumed to follow the instructions they are given," United States v. Root, 585 F.3d 145, 167 (3d Cir. 2009), and Barlow does not cite any evidence of juror prejudice as a result of the Gulley Boy murder trial.  He merely argues that the negative publicity existed.  Indeed, Barlow does not point to any evidence that the jurors were even aware of the Gulley Boy media coverage.  Compare Flamer, 68 F.3d at 754 (stating that a presumption of prejudice arises only where there is hostile and pervasive community and media reactions).  Therefore, Barlow's trial counsel was not ineffective for failing to move

for a transfer of venue, or continuance, because Barlow would not have been entitled to a change of venue or severance under the applicable law.

### 5.   Trial Counsel's Failure to Move to Sever

Petitioner asserts that his trial counsel was also ineffective because he failed to request severance from his co-defendant, Alfredo Payne. "The federal system prefers joint trials of defendants who are indicted together because joint trials promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts." U.S. v. Heilman, 377 Fed.Appx. 157, 198 (3d Cir. 2010) (citing United States v. Lore, 430 F.3d 190, 205 (3d. Cir. 2005)).  This preference is heightened when co-defendants are also co-conspirators; "[J]oint trials of defendants charged in a single conspiracy aid the fact-finder in determining the full extent of the conspiracy and prevent a tactical disadvantage to the Government from disclosure of its case."  Id. (citing United States v. Voigt, 89 F.3d 1050, 1094 (3d Cir. 1996)).  For these reasons, defendants "bear a heavy burden" in establishing a reason for severance and "must demonstrate not only that the court would abuse its discretion if it denied severance, but also that the denial of severance would lead to clear and substantial prejudice resulting in a manifestly unfair trial." United States v. Bornman, 559 F.3d 150, 156 (3d Cir. 2009) (internal quotation marks and citations omitted).

That said, the Court may order severance of offenses if the defendant might be prejudiced by joinder of offenses. See Fed. R. Cr. P. 14(a).  To be clear, "Rule 14(a) does not

require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." Heilman, 377 Fed.Appx. at 199. Severance should be granted only if "there is a serious risk that a joint trial would (1) compromise a specific trial right of the defendants, or (2) prevent the jury from making a reliable judgment regarding guilt or innocence." Id. (citing Zafiro v. United States, 506 U.S. 534, 538–39, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993)). "[L]ess drastic measures than severance, such as limiting instructions, often will suffice to cure any risk of prejudice." Id.

Moreover, a defendant is not entitled to severance merely because the evidence against co-defendants is more damaging than evidence against the moving party, nor is it sufficient to merely allege prejudice should be found because all evidence adduced at trial is not germane to all counts against the defendant. Lore, 430 F.3d at 205 (noting it is not problematic to have defendants in same case charged with different acts or offenses). Additionally, where defendants are charged as members of the same conspiracy, acts committed by one member in furtherance of the conspiracy would be admissible against the others, even in a separate trial. See United States v. Hart, 273 F.3d 363, 370 (3d Cir. 2001); Heilman, 377 Fed.Appx. at 200.

Barlow argues that when a government informant testified, he testified that he handed Mr. Barlow $1,500 but that it was Payne that provided the crack to the informant.

In Barlow's view, this testimony prejudiced him and would not have been admitted had his case been severed from Payne's.  As the Government correctly argues, however, one co-conspirator's acts are admissible against another co-conspirator.  See Heilman, 377 Fed.Appx. at 200 ("[W]here defendants are charged as members of the same conspiracy, acts committed by one in furtherance of the conspiracy would be admissible against others, even in a separate trial.") (citing Hart, 273 F.3d at 370).

Moreover, the Court gave limiting instructions directing the jury to compartmentalize the evidence against each defendant.  See Trial Transcript dated June 15,2007 at 127:10-19.[14] Courts have held that this sort of limiting instruction further ensures that a defendant is not prejudiced by damaging evidence offered against a co-defendant.  See Zafiro, 506 U.S. at 539; Heilman, 377 Fed.Appx. at 200-201.  Accordingly, I would not have granted a motion to sever had trial counsel so moved.  Consequently, Barlow cannot demonstrate that his counsel's failure to request severance prejudiced him and Barlow's ineffective assistance claim, on this basis, fails.  See Strickland, 468 U.S. at 694.

## C.      Remaining Challenges

---

[14]      "Each count and the evidence pertaining to it should be considered separately.  Also, the case of each defendant should be considered separately and individually.  The fact [that] you may find one defendant guilty or not guilty of any of the offenses charged should not control your verdict as to any other offense charged or to any other defendant.  And even though I may discuss related charges together, because they share a common and legal [or] factual elements, you consider each count and each defendant separately."

Lastly, Barlow makes three additional argument simply to preserve issues for appeal of this habeas petition.  He, first, argues that his Fifth Amendment right to Due Process and Sixth Amendment right to jury trial were violated because the Court based his life sentence on prior convictions not charged or proven to the jury beyond a reasonable doubt.  Barlow acknowledges that this argument is currently foreclosed by the Third Circuit's decision in U.S. v. Coleman, 451 F.3d 154 (3d Cir. 2006).   He argues, second, that his life sentence is unreasonable because it was greater than necessary to achieve the statutory goals of sentencing and is a violation of the separation of powers.  This argument, he acknowledges, has also been rejected by the Third Circuit.  See U.S. v. Kellum, 356 F.3d 285 (3d Cir. 2004). Finally, Barlow argues that mandatory minimum sentences violate the separation of powers doctrine while recognizing that the Third Circuit rejected this argument in U.S. v. Walker, 473 F.3d 71 (3d Cir. 2007).

## III.    CONCLUSION

For the foregoing reasons, the Court denies Barlow's habeas petition as well as his motion for summary judgment on that petition.


/s/ Freda L. Wolfson
Freda L. Wolfson, U.S.D.J.

Dated: January 30, 2012